**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Newport News Division**

**LIEN C.,**

**Plaintiff,**

**v.** **CIVIL ACTION NO. 4:25-cv-119**

**FRANK BISIGNANO,**
**COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION,**

**Defendant.**

***MEMORANDUM OPINION AND ORDER***

This matter comes before the Court on Lien C.'s[1] ("Plaintiff") Objection to the Report and Recommendation ("R & R") of the Magistrate Judge dated June 29, 2026. ECF No. 11 ("Pl.'s Obj."). For the reasons set forth below, the Magistrate Judge's Report and Recommendation is **ADOPTED**, Plaintiff's Objection is **OVERRULED**, and the decision of the Administrative Law Judge ("ALJ") is **AFFIRMED**. Accordingly, Plaintiff's Motion for Summary Judgment, ECF No. 7, is **DENIED**, and the Final Decision of the Commissioner is **AFFIRMED**.

## I. FACTUAL AND PROCEDURAL HISTORY

The facts and administrative procedural background are adopted as set forth in the Magistrate Judge's R & R. *See* R & R, ECF No. 19. Plaintiff filed an application for disability insurance benefits ("DIB") in May 2022. R. at 69.[2] She alleged that she had been disabled since February 15, 2022, because of depression, anxiety, and post-traumatic stress disorder ("PTSD").

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] "R." refers to the certified administrative record that was filed under seal on April 5, 2024, ECF No. 4, pursuant to Eastern District of Virginia Local Civil Rules 5(B) and 7(C)(1).

R. at 70. Plaintiff was fifty-five years old at the time of her alleged onset date, or a "person of advanced age" under the regulations. R. at 70; 20 C.F.R. § 404.1563(c). Medical experts with Virginia Disability Determination Services ("DDS") found Plaintiff "not disabled" upon an initial review in November 2022 and upon reconsideration in October 2023. R. at 70–90.

On December 5, 2023, Plaintiff requested a hearing before an administrative law judge. R. at 109. A hearing was held on August 5, 2024, at which Plaintiff appeared with counsel before the Administrative Law Judge (the "ALJ"). R. at 36–68. Both Plaintiff and an impartial vocational expert testified at the hearing. R. at 41–68.

On August 29, 2024, the ALJ issued a decision finding Plaintiff not disabled and Plaintiff appealed. R. at 9–22. The Appeals Council denied her appeal, making the ALJ's decision the final decision of the Commissioner. R. at 9–22. Plaintiff filed a Complaint seeking judicial review of the Commissioner's decision. ECF No. 1. The matter is fully briefed. ECF Nos. 7–9.

### A. Plaintiff's Medical Records Relevant to Alleged Mental Impairments[3]

The administrate record contains no medical records prior to Plaintiff's alleged onset date.

In March 2022, Plaintiff reported a history of depression to Davenna McGlone, M.D., at McDonald Army Health Center R. at 614–15. Plaintiff was crying through the exam and stated she had seen a counselor. R. at 614. Dr. McGlone noted Plaintiff's mood was depressed and her affect was sad. R. at 614. However, Plaintiff's attitude was normal and her mood was euthymic. R. at 614. Dr. McGlone screened Plaintiff for depression and diagnosed her with adjustment disorder, unspecified. R. at 614.

On March 9, 2022, Nancy B. Switkay, M.A.Ed., Resident in Counseling, performed a psychiatric diagnostic evaluation, under the supervision of Jill Nardin, Ph. D., LPC. R. at 675–76;

[3] Because Plaintiff's physical impairments are not at issue, the Court does not address all of Plaintiff's medical records relating to her physical impairments.

*See* R. at 725 (noting Dr. Switkay is "the provider who meets with [Plaintiff] on a weekly basis."). Plaintiff reported she was suicidal. R. at 676. On evaluation, Dr. Switkay noted Plaintiff's speech was normal and she was interactive, but her affect was tearful and her mood was depressed. R. at 675.

Because Plaintiff reported suicidal thoughts, Dr. Switkay referred her to Sentara Hospital's emergency room, where she informed the provider that she had suicidal thoughts earlier in the day but no longer had any. R. at 424, 676. During her intake exam, Plaintiff was alert, awake, and appropriately oriented; her speech was normal; her motor was intact; and her affect and mood were depressed. 426. Plaintiff was diagnosed with depression and suicidal ideations and voluntarily admitted herself to the behavioral health unit at Sentara for inpatient treatment. R. at 428. Throughout treatment, providers observed that, while Plaintiff was depressed, she remained oriented and cooperative and her speech was clear and fluent. R. at 392, 396, 403–04, 408, 413–14, 429, 436. She also "interact[ed] appropriately with staff and peers." R. at 405.

On March 14, 2022, Plaintiff voluntarily discharged herself and her provider scheduled follow-up appointments with Dr. Switkay and Dr. McGlone. R. at 419–22. Dr. McGlone noted Plaintiff's depression screening was negative and her mood was euthymic. R. 610–11. Dr. Switkay noted Plaintiff was in a pleasant mood, interactive, and functioning well. R. at 677–78.

Between March 2022 and August 2023, Plaintiff continued to receive treatment from Dr. Switkay and Dr. McGlone. R. at 675–721, 838–68, 875–902. Throughout Plaintiff's appointments with Dr. Switkay, her mood fluctuated between pleasant, depressed, pensive, and anxious. R. at 675–721, 838–68, 875–902. However, her affect remained appropriate and she was interactive. R. at 675–721, 838–68, 875–902. While Plaintiff occasionally had difficulty functioning, her speech was normal and she had sufficient impulse control. R. at 675–721, 838–68, 847–908. Her disability

score under the World Health Organizations Disability Assessment Schedule decreased over time from 114 to 91. *Compare* R. at 677, *with* R. at 901. At Plaintiff's last appointment with Dr. Switkay in the record, Dr. Switkay diagnosed her with PTSD. R. at 901. Throughout Plaintiff's appointments with Dr. McGlone, her depressions screenings fluctuated between positive and negative. R. 820, 825.

In October 2022, Dr. Nardin completed a check-the-box, fill-in-the-blank Disability Benefits Questionnaire for Plaintiff. R. at 722–33. Dr. Nardin diagnosed Plaintiff with PTSD, chronic; major depressive disorder, recurrent, moderate; and generalized anxiety disorder. R. at 723. Dr. Nardin checked a box indicating Plaintiff had a "[o]ccupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks." R. at 724. Dr. Nardin elaborated that "[t]here are times that it is obvious that the depressive symptoms are what inhibits her functioning, and other times that the triggers and stressors related to what caused PTSD are what inhibits her functioning." R. at 724. Dr. Nardin checked a box indicating she did not review any records but clarified she reviewed only the "practice records that were completed by both the veteran and the provider who meets with her on a weekly basis." R. at 725.

Following Plaintiff's inpatient treatment at Sentara, she also received treatment from other providers. Between May 2022 and March 2024, Plaintiff received treatment from Liliana Kim, D.N.P., at Coastal Psychiatric Services. R. at 633–49, 734–54, 1024–84, 1534–94. At her first appointment, Plaintiff reported having a history of depression and PTSD and explained it was "impacting the day to day functioning in [her] life." R. at 646. Plaintiff explained her strengths include her verbal, social, and problem-solving skills, and her weaknesses include her self-esteem and impulse control. R. at 647. Dr. Kim diagnosed Plaintiff with generalized anxiety disorder and

major depressive disorder, recurrent, moderate. R. at 648. Throughout treatment Plaintiff's mood fluctuated, but she remained oriented and her speech was fluent and clear. R. at 633–49, 734–54, 1024–84, 1534–94. In March 2024, although Dr. Kim noted Plaintiff's mood was anxious, Plaintiff reported "doing good." Dr. Kim also noted Plaintiff was oriented, her speech was fluent and clear, and she had no suicidal thoughts. R. at 1030–31. Dr. Kim diagnosed Plaintiff with generalized anxiety disorder; major depressive disorder, recurrent, moderate; chronic PTSD; and Nightmares. R. at 1032.

In October 2023, Plaintiff relayed concerns of increased forgetfulness to Suraj Rajan, M.D., at Riverside Neurology Specialists. R. at 953–55. Dr. Rajan reviewed a recent MRI and noted it was normal. R. at 953–54. Dr. Rajan diagnosed Plaintiff with frontal lobe and executive function deficit and referred her for a neurological examination with David B. Rogers, Psy. D. R. at 954.

At her referral appointment with Dr. Rogers, Plaintiff reported she was "a mess" and experiencing memory and "word-finding" problems. R. at 1196–97. David B. Rogers, Psy.D., conducted a neurological examination and noted that she was oriented, pleasant, alert, and spoke fluently and coherently. R. at 1200. Dr. Rogers also noted "there were indications [Plaintiff] may have tended to over-report or magnify psychological symptomatology, with there being a possible propensity to present herself in a pathological manner as well as minimization of positive aspects of herself." R. at 1200. Dr. Rogers concluded that Plaintiff's "emotional status suggested possible magnification of psychological difficulties, though overall her responding was indicative of significant emotional distress," and diagnosed her with attention-deficit/hyperactivity disorder ("ADHD"); PTSD; major depressive disorder, recurrent episode, moderate with previous psychotic features, generalized anxiety disorder, and borderline and Cluster C personality features R. at 1202.

At her follow-up with Dr. Rajan, Plaintiff was awake, alert, and responsive, and she demonstrated good recall of history and times. R. at 950. Her speech and language were normal and she had normal attention, executive, function, praxis, and visuospatial abilities. R. at 950. Dr. Rajan noted Dr. Roger's neuropsychiatric diagnosis and concluded Plaintiff had "longstanding attention deficits" but her "memory abilities were intact with no significant signs of neurodegeneration." R. at 951.

In June 2024, Plaintiff reported to the Hampton Veterans Affairs Medical Center (the "VA") that she wanted to get treatment through the VA for depression, mood swings, and poor sleep. R. at 1130. On examination, she was pleasant, alert and oriented, and cooperative. R. at 1131. The provider noted she was depressed but had no suicidal thoughts. R. at 1131.

**B. Relevant Medical Opinions**

In October 2022, Dr. Nardin completed a "check the box" Disability Benefits Questionnaire for Plaintiff. R. at 722–33. Dr. Nardin diagnosed her with PTSD, chronic; major depressive disorder, recurrent, moderate; and generalized anxiety disorder. R. at 723. Dr. Nardin checked a box indicating Plaintiff had a "[o]ccupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks." R. at 724. Dr. Nardin elaborated that "[t]here are times that it is obvious that the depressive symptoms are what inhibits her functioning, and other times that the triggers and stressors related to what caused PTSD are what inhibits her functioning." R. at 724. Dr. Nardin checked a box indicating she did not review any records but clarified she reviewed only the "practice records that were completed by both the veteran and the provider who meets with her on a weekly basis." R. at 725.

On initial review, the DDS examiner, Howard Leizer, Ph.D., determined Plaintiff had mild

limitations on her ability to understand, remember, or apply information and to adapt or manage herself, and she had moderate limitations on her ability to interact with others and concentrate, persist, or maintain pace. R. at 73. On reconsideration, the DDS examiner, Stephen Saxby, Ph.D., largely agreed with Dr. Leizer, except he determined Plaintiff was moderately limited in her ability to adapt or manage herself. R. at 83.

### C. Plaintiff's Testimony at the ALJ Hearing

At the ALJ hearing, Plaintiff testified she stopped working on February 15, 2022, because she "was not able to be as productive as [she] wanted." R. at 45. She explained that she struggled with anxiety and depression daily and had panic attacks about once per week. R. at 45, 48–50, 58. She had a circle of friends, attended social groups several times per week, and babysat her granddaughter. R. at 45, 48–50. Plaintiff stated her depression and anxiety prevented her from working. R. at 60–61.

## II. LEGAL STANDARD

When considering a party's objections to the findings and recommendations of a magistrate judge, a district judge "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." FED. R. CIV. P. 72(b)(3); *Wimmer v. Cook*, 774 F.2d 68, 73 (4th Cir. 1985). Under *de novo* review, the R & R "carries no presumptive weight, and the district court may accept, reject, or modify the report, in whole or in part, and may recommit the matter to the magistrate judge with instructions." *Halloway v. Bashara*, 176 F.R.D. 207, 209–10 (E.D. Va. 1997) (citation omitted); *see* FED. R. CIV. P. 72(b)(3) (noting "[t]he district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."). A district judge must give "fresh consideration" to the relevant portions of the magistrate judge's R & R. *United States v. Raddatz*, 447 U.S. 667, 675 (1980).

The Court must uphold a disability determination "if (1) the ALJ applied the correct legal standards and (2) substantial evidence supports the ALJ's factual findings." *Arakas v. Comm'r*, 983 F.3d 83, 95 (4th Cir. 2020). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). When reviewing for substantial evidence, the Court does not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Id.* The ALJ "must build an accurate and logical bridge from the evidence to their conclusions." *Arakas*, 983 F.3d at 95. The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed. *See Richardson v. Perales*, 402 U.S. 389, 390 (1971).

## III. DISCUSSION

Plaintiff raises one objection to the R & R, asserting the ALJ failed to properly evaluate Dr. Nardin's treating source opinion. Pl.'s Obj. at 2. While Plaintiff acknowledges Dr. Nardin's opinion "could be described as checked boxes," Plaintiff contends Dr. Nardin also provided narrative responses. *Id.* at 3. Plaintiff insists Dr. Nardin provided support for her opinion and the ALJ failed to acknowledge that support and, thus, the ALJ's evaluation of Dr. Nardin's opinion "was tainted." *Id.* at 4. Plaintiff does not object to the R & R's finding as to the consistency of Dr. Nardin's opinion.

The ALJ was not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c(a). Instead, the ALJ must consider five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors that tend to support or contradict a medical opinion. *Id.* § 404.1520c(c). However, an ALJ is only required to articulate

their assessment of the supportability and consistency factors. *Oakes v. Kijakazi*, 70 F.4th 207, 212 (4th Cir. 2023) (citing 20 C.F.R. § 404.1520c(c)(1)).

Supportability refers to how "relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . ." *Id.* § 404.1520c(c)(1). "To assess supportability, the ALJ must consider whether a medical source considered relevant 'objective medical evidence and [presented] supporting explanations.'" *Todd A. v. Kijakazi*, No. 3:20-cv-594, 2021 WL 5348668, at *5 (E.D. Va. Nov. 16, 2021) (quoting 20 C.F.R. §§ 404.1520c(c)(l); 416.920c(c)(l)).

In her opinion, the ALJ summarized and evaluated the medical and other evidence. R. 16–22. The ALJ found unpersuasive Dr. Nardin's opinion that Plaintiff "had occupational and social impairments with an occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks." R. at 21. The ALJ noted Dr. Nardin's opinion was based on subjective complaints and not supported with objective findings from Dr. Nardin. R. at 21. The ALJ also noted Dr. Nardin's opined impairments were inconsistent with normal mental status findings, Plaintiff's significant activities of daily living, and conservative treatment history. R. at 21. In other words, the ALJ concluded the medical records did not support Dr. Nardin's opined social and occupational impairment.

The Court finds substantial evidence supports the ALJ's evaluation of the supportability of Dr. Nardin's medical opinion. *See Drumgold v. Comm'r of Soc. Sec.*, 144 F.4th 596, 606–09 (2025) (finding the ALJ properly weighed supportability when evaluating check-the-box forms from a healthcare provider). In the disability questionnaire, Dr. Nardin acknowledged that she was not Plaintiff's provider and merely reviewed Dr. Switkay's provider notes. While Dr. Nardin checked a box indicating Plaintiff had an occupation and social impairment, Dr. Nardin did not reference

any objective medical findings and merely noted it was "obvious" when Plaintiff's depression and PTSD inhibited her functioning. *Drumgold*, 144 F.4th at 606 (noting "check-the-box forms," without more, are not "objective medical *evidence*."); *see Frank S. v. Comm'r, SSA*, No. 18-1796, 2019 WL 118071, at *6 (D. Md. Mar. 11, 2019) (concluding "the lack of explanation on a 'check-box' form certainly affects its supportability."). Throughout mental status exams, she was interactive and oriented, and her speech was clear and fluent. R. at 675–721, 838–68, 875–902. Plaintiff testified she shopped weekly, attended social groups multiple times per week, and babysat her granddaughter. R. at 45, 48–50. Even though Plaintiff testified her mental impairments prevented her from working, Dr. Rogers noted Plaintiff overstated her symptoms. Accordingly, the ALJ built an accurate and logical bridge between the evidence and her conclusion and there is substantial evidence to support her evaluation of Dr. Nardin's opined impairments.

## IV. CONCLUSION

This Court has carefully and independently reviewed the record in this case and the objection to the R & R. Having done so, the Court finds there is no meritorious reason to sustain Plaintiff's objection. Therefore, the Court **OVERRULES** Plaintiff's Objection, ECF No. 11, to the R & R. Furthermore, the Court has reviewed the remainder of the R & R along with the record of this case and finds no clear error. For these reasons, the Court does hereby **ACCEPT** and **ADOPT** the findings and recommendations set forth in the R & R. ECF No. 10.

Accordingly, Plaintiff's motion for summary judgment, ECF No. 7, is **DENIED**, and the Final Decision of the Commissioner is **AFFIRMED**. Judgment is hereby entered in favor of the Acting Commissioner. This case is **DISMISSED** with prejudice.

The Court **DIRECTS** the Clerk to provide a copy of this Order to the parties.

**IT IS SO ORDERED**.

Norfolk, Virginia

September 25, 2026

/s/
Raymond A. Jackson
United States District Judge